UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

EMMA DOE, ET AL.                                CIVIL ACTION

v.                                              NO. 12-1670

JAMES CALDWELL, ET AL.                          SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are three motions: (1) the defendants' motion to dismiss; (2) the plaintiffs' motion for class certification; and (3) the plaintiffs' motion for summary judgment.  For the reasons that follow, the defendants' motion to dismiss is DENIED and the plaintiffs' motions for class certification and summary judgment are continued, to be reset because of inadequate briefing.

## **Background**

This putative class action lawsuit follows this Court's March 29, 2012 ruling in <u>Doe v. Jindal</u>, 851 F. Supp. 2d 995 (E.D. La. 2012), in which the Court declared that Louisiana's sex offender registry law, which mandates sex offender registration by individuals convicted of violating the State's Crime Against Nature by Solicitation statute, but not those convicted for the identical sexual conduct under the Prostitution statute, deprived individuals of Equal Protection of the laws; the nine plaintiffs in <u>Doe I</u> have since been relieved by the State of their sex offender registration obligations.  In this new lawsuit, the plaintiffs and proposed

1

class members now challenge the requirement that, notwithstanding
Doe I, the State claims to be without the authority to act and they
continue to face mandatory sex offender registration as a result of
their convictions for Crime Against Nature by Solicitation.

The facts underlying the Equal Protection challenge advanced
in Doe I are more completely set forth in that opinion.  851 F.
Supp. 2d 995 (E.D. La. 2012).[1]  The Judgment, which was entered on
April 11, 2012, provides in part:

> IT IS HEREBY DECLARED, ORDERED, ADJUDGED AND
> DECREED that:
> 1.   The application of the Registration of Sex
> Offenders,   Sexually   Violent   Predators,   and   Child

---

[1]In Louisiana, the solicitation of oral or anal sex for
compensation can be prosecuted under two statutes: the solicitation
provision of the Prostitution statute and the Crime Against Nature
by Solicitation statute.   The solicitation provision of the
Prostitution statute outlaws "[t]he solicitation by one person of
another with the intent to engage in indiscriminate sexual
intercourse with the latter for compensation."   La.R.S.
14:82(A)(2).  The Prostitution statute defines "sexual intercourse"
as "anal, oral, or vaginal sexual intercourse."  La.R.S. 14:82(B).
The Crime Against Nature by Solicitation statute forbids
"solicitation by a human being of another with the intent to engage
in any unnatural carnal copulation for compensation."  La.R.S.
14:89.2(A).  "Unnatural carnal copulation" is defined as oral or
anal sexual intercourse.  See, e.g., Louisiana v. Smith, 766 So.2d
501, 504-05 (La. 2000).
On   February   15,   2011   nine   plaintiffs,   proceeding
pseudonymously, sued the defendants in their official capacities
under 42 U.S.C. § 1983 to challenge the constitutionality of
Louisiana's mandatory inclusion of one particular crime on the
State's sex offender registry, the Crime Against Nature by
Solicitation statute. This Court determined that there was no
rational legislative purpose in requiring registration as a sex
offender for persons convicted for violation of Crime Against
Nature by Solicitation when conviction under the identical
solicitation provision of Louisiana's Prostitution statute
commanded no sex offender registration.  See Doe I.

Predators law (Registry Law), La.R.S. § 15:540 et seq.,
to those convicted of Crime Against Nature by
Solicitation under La.R.S. § 14:89(A)(2) or La.R.S. §
14:89.2(A), and their inclusion on the State Sex Offender
& Child Predator Registry (SOCPR) pursuant to La.R.S. §
15:542, deprives them of equal protection of the laws in
violation of the Fourteenth Amendment of the United
States Constitution;

2.   Defendants must cease and desist from
placing any individuals convicted of Crime Against Nature
by Solicitation under La.R.S. § 14:89(A)(2) or La.R.S. §
14:89.2(A) on the SOCPR;

3.   This Judgment and Order does not apply to
La.R.S. § 14:89.2(C);

4.   Defendants LeBlanc and Edmonson, in their
official capacities must remove Plaintiffs from the SOCPR
within thirty (30) days of the entry of this Judgment and
Order, following the procedures laid out in paragraph 4
of the Protective Order...;

5.   Defendants in their official capacities,
and all persons under the control or supervision of
Defendants, are permanently enjoined from disclosing
Plaintiffs' prior inclusion on the SOCPR, and must remove
Plaintiffs from any and all municipal, city and state
databases which indicate that Plaintiffs were included on
the SOCPR within thirty (30) days of the entry of this
Judgment and Order;

6.   Defendants LeBlanc and Edmonson, in their
official capacities, must notify all...agencies that have
been provided within information about Plaintiffs'
inclusion on the SOCPR...of Plaintiffs' removal from the
SOCPR and inform such agencies that Plaintiffs are no
longer subject to the Registry Law within thirty (30)
days of the entry of this Judgment and Order;

7.   Defendant Gautreaux, in his official
capacity, must provie Plaintiffs with new driver's
licenses...without the words "Sex Offender," at no cost
to Plaintiffs, within thirty (30) days of the entry of
this Judgment and Order;

8.   Counsel for Defendants shall provide this
Court and counsel for Plaintiffs with a written report
regarding their implementation of paragraphs 4, 5, 6 and
7 of this Judgment and Order within thirty (30) days of
entry of this Judgment and Order;

9.   This Judgment and Order is entered
contingent upon Defendants' Stipulation waiving appeal of
this Judgment and Order and this Court's Order and
Reasons dated March 29, 2012...;

3

                    10.   Costs and fees shall be awarded by the
          Court upon application by Plaintiffs....
                    11.  This Court shall retain jurisdiction over
          this matter for 90 days after entry of this Judgment and
          Order to monitor and enforce compliance with this
          Judgment and Order.

In response to the Court's Judgment, some six weeks later, the

Louisiana legislature enacted into law on May 31, 2012 Act 402 of

the 2012 Legislative Session.[2]   Act 402, which amends La.R.S. §

15:542 provides:

          ...
          F.
          ...
          (4)(a) Any person who was convicted of crime against
          nature (R.S. 14:89) prior to August 15, 2010, may file a
          motion in the court of conviction to be relieved of the
          sex offender registration and notification requirements
          of this Chapter if the offense for which the offender was
          convicted would be defined as crime against nature by
          solicitation (R.S. 14:89.2) had the offender been
          convicted on or after August 15, 2010. Offenders
          convicted of an offense under the laws of another state,
          or military, territorial, foreign, tribal, or federal law
          may file a motion in the district court of his parish of
          residence once the administrative procedures of R.S.
          15:542.1.3 have been exhausted and the elements of the
          offense of conviction have been found to be equivalent to
          the current definition of crime against nature by
          solicitation (R.S. 14:89.2).   The provisions of this
          Subparagraph shall not apply to persons whose conviction
          for crime against nature pursuant to R.S. 14:89 involved
          the solicitation of a person under the age of seventeen
          and would authorize sentencing of the offender pursuant
          to R.S. 14:89.2(B)(3), had the offender been convicted on
          or after August 15, 2010.
          (b)  The motion shall be accompanied by supporting
          documentation to establish that the person was convicted
          of crime against nature prior to August 15, 2010, and

_____

          [2]Plaintiffs here do not present any allegations regarding
Act 402; the Court takes judicial notice that the Legislature has
amended the Registry Law.

                              4

that the offense for which the offender was convicted
would be defined as crime against nature by solicitation
(R.S. 14:89.2) had the offender been convicted on or
after August 15, 2010.
(c) The district attorney, office of state of police, and
the Department of Justice, shall be served with a copy of
the motion.
(d) If the supporting documentation described in
Subparagraph (b) of this Paragraph is provided and meets
the requirements of Subparagraph (4)(b), relief shall be
granted unless the district attorney objects and provides
supporting documentation proving that the offense for
which the person was convicted, and which requires
registration and notification pursuant to the provisions
of this Chapter, involved the solicitation of a person
under the age of seventeen.
(e) If the district attorney proves by clear and
convincing evidence that the conviction for crime against
nature pursuant to R.S. 14:89 involved the solicitation
of a person under the age of seventeen, the court shall
deny the motion to be relieved of the sex offender
registration and notification requirements as provided by
the provisions of this Paragraph.
(f) The provisions of this Paragraph shall not apply to
any person who was convicted of one or more offenses
which otherwise require registration pursuant to the
provisions of this Chapter.

La.R.S. 15:541(F)(4)(2012)(as amended by Act 402).  Accordingly,

under Act 402, a person convicted of Crime Against Nature by

Solicitation may petition a state court for an order removing him

or her from the state registry and relieving that person from any

registration obligations.  This remedy is not self-executing;

rather, it requires the registrant to file papers in a local court

and to prove entitlement to relief, and for the court to grant

relief.

      Less than one month after Act 402 became law, four

plaintiffs,[3] proceeding pseudonymously, on their behalf and on behalf of others similarly situated,[4] sued the defendants in their official capacities under 42 U.S.C. § 1983 in this Court.   These plaintiffs allege that they and the class they seek to represent are identically situated to the prevailing plaintiffs in Doe I.[5] As in Doe I, plaintiffs here have sued James D. Caldwell, Attorney General of the State of Louisiana; James M. Leblanc, Secretary, Louisiana Department of Public Safety and Correction; Michael Edmondson, Superintendent, Louisiana State Police; Charles Dupuy, Deputy Superintendent, Louisiana State Police; Eugenie C. Powers, Director, Division of Probation and Parole, Louisiana Department of Public Safety and Corrections; Barry Matheny, Assistant Director,

---

[3]Since one of the plaintiffs voluntarily dismissed his claims on October 29, 2012, there are now three anonymous plaintiffs proceeding on behalf of a putative class.

[4]Plaintiffs estimate approximately 484 individuals statewide must register as sex offenders solely as a result of a Crime Against Nature by Solicitation conviction.   They present class action allegations in which they suggest that class treatment is warranted pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2).

[5]Plaintiffs allege that "No plaintiff has been convicted of any other crime that requires registration as a sex offender." In fact, each plaintiff alleges that he or she has been convicted of Crime Against Nature by Solicitation for agreeing to perform oral sex for money and must register as a sex offender solely as a result of a Crime Against Nature by Solicitation conviction prior to August 15, 2011, pursuant to La.R.S. 15:542, et seq.   "The prostitution statute encompasses all the criminal conduct alleged to have been committed by plaintiffs[; h]owever," plaintiffs allege, "because Plaintiffs were charged with, and convicted of, Crime Against Nature by Solicitation rather than prostitution, they are required to register as sex offenders."

Division of Probation and Parole, Louisiana Department of Public Safety and Corrections; and Stephen Campbell, Commissioner, Office of Motor Vehicles; each defendant is sued in his or her official capacity.[6]   Plaintiffs allege that:

> The[se] defendants, by continuing to require plaintiffs and all other individuals similarly situated to register as sex offenders, are violating the rights guaranteed to the named plaintiffs and the plaintiff class under the Fourteenth Amendment to the United States Constitution. Plaintiffs seek a judgment declaring that the defendants' actions violate the rights of individuals required to register as sex offenders pursuant to a CANS conviction to the equal protection of the laws and applying this Court's prior ruling to the entire class of individuals whose rights are so violated.  Plaintiffs further seek an injunction compelling defendants to remove plaintiffs and all other individuals similarly situated from the sex offender registry and to expunge all records signaling their past inclusion on the registry.

In the factual allegations framing the plaintiffs' § 1983 Equal Protection claim, plaintiffs trace the legislative history of the Crime Against Nature by Solicitation statute and accompanying penalties and registration requirement, as well as this Court's Order and Reasons and Judgment in <u>Doe I</u>.  Plaintiffs also summarize the sex offender registration requirements that continue to be imposed upon them as a result of their Crime Against Nature by Solicitation convictions.[7]   Plaintiffs allege that defendants'

---

[6]With a few exceptions, these are the same defendants sued in their official capacities that the <u>Doe I</u> plaintiffs named.

[7]Under the registry law, plaintiffs allege, an individual convicted of Crime Against Nature by Solicitation must: (1) provide her or his name, residential, work, and school addresses, along with travel routes and proof of residence; (2) provide a current

enforcement of the registry law as to them has no rational relationship to a legitimate governmental interest and, therefore, is in violation of their right to Equal Protection of the laws under the Fourteenth Amendment to the United States Constitution. Finally, in their complaint, the plaintiffs request that this Court:

---

photograph, fingerprints, palm prints, a DNA sample, telephone numbers, a description of every vehicle registered to or operated by the registrant, a copy of the driver's license, social security number, date of birth, a description of physical characteristics, email addresses and other online identifiers, temporary lodging information regarding any place the registrant plans to stay for seven or more days; (3) pay an annual registration fee of $60.00 to every law enforcement agency with which she or he is registered; failure to do so subjects the registrant to prosecution; (4) disclose the fact of their sex offender registration to all members of the communities in which they live, work, study and worship; school principals must post notices in conspicuous areas in schools with the registrant's name, address, and crime of conviction; (5) notify landlords, the superintendent of any park or playground near the registrant's home; the registrant's name, address, and crime of conviction must be posted in a conspicuous area in the park or playground; (6) carry a special identification card issued by the Department of Public Safety and Corrections that includes the words "SEX OFFENDER" in bright orange capital letters at all time; failure to obtain and renew this card annually constitutes a misdemeanor; (7) obtain a driver's license or non-driver's state identification card that features the words "SEX OFFENDER" in bright orange capital letters; (8) contact the sheriff's office or police department if they change residences or are absent for more than 30 days; (9) appear in person at the sheriff's office three days prior to leaving the registered residence to provide information regarding temporary lodging information if the registrant plans to stay somewhere other than his or her registered address for seven or more days; (10) register, renew, and update registration and comply with all requirements of the registry law or face prosecution for failure to do so, which may include incarceration for up to 20 years at hard labor; criminal liability attaches irrespective of the reason for failure to comply, such as inability to pay for registration or delivery of notification postcards, or homelessness.

a.   certify this case as a class action;
b.   declare that La.R.S. § 15:542(A)(1)(a) violates the Equal
     Protection Clause of the Fourteenth Amendment insofar as it
     requires all individuals convicted of Crime Against Nature by
     Solicitation to register as sex offenders;
c.   order defendants to permanently remove the named plaintiffs
     and class members from the sex offender registry;
d.   order defendants to expunge all state records that document in
     any fashion that plaintiffs were ever registered as sex
     offenders;
e.   order defendants to alert all agencies who were provided
     information regarding the registration of plaintiffs and all
     members of the plaintiff class as sex offenders that this
     information is no longer valid;
f.   grant plaintiffs authority to monitor defendants' compliance
     with any injunctive relief ordered by the Court;
g.   award attorneys' fees and costs.

     The defendants now seek dismissal of the plaintiffs' lawsuit,

invoking the doctrine of sovereign immunity; arguing that the

plaintiffs have failed to adequately allege standing; and, in the

alternative, contending that the plaintiffs fail to state a claim

for relief because they have not pleaded a violation of the

Constitution.  The plaintiffs, on the other hand, now request that

this Court certify a class of persons consisting of:

     all persons who were convicted under the Louisiana Crime
     Against Nature by Solicitation Statute, La.R.S. §
     14:89(A)(2) or 14:89.2(A), for solicitation of oral or
     anal sex for compensation prior to August 15, 2011 and,
     as a result, have been or will be subject to sex offender
     registration requirements under Louisiana's Registration
     of Sex Offender Law, La.R.S. §§ 15:540-15:553.

The plaintiffs also seek summary judgment in their favor.  The only

issues that have been adequately briefed to the Court deal with the

motion to dismiss.

9

I.

*A.*

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the Court's subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). The defendants, sued in their official capacities, challenge this Court's subject matter jurisdiction over them, invoking the doctrine of sovereign immunity. The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The Court may find a plausible set of facts to support subject matter jurisdiction by considering any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Barrera-Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996).

*B.*

The defendants also seek dismissal for failure to state a claim under Rule 12(b)(6). The standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6). See Williams v. Wynne, 533 F.3d 360, 364-65 n.2 (5th Cir. 2008)(observing that the Rule 12(b)(1) and Rule 12(b)(6) standards are similar, but noting that applying the Rule 12(b)(1) standard permits the Court to consider a broader range of materials in resolving the motion).

10

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).  In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982). Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).  A corollary: legal conclusions "must be supported by factual allegations." Id. at 1950.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to

relief that is plausible on its face.'" <u>Gonzalez v. Kay</u>, 577 F.3d 600, 603 (5th Cir. 2009)(quoting <u>Iqbal</u>, 129 S.Ct. at 1949 (2009))(internal quotation marks omitted).   "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quotation marks, citations, and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949  ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u>  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 557)(internal quotations omitted).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (citation omitted).

In deciding a motion to dismiss, the Court may consider

documents that are essentially "part of the pleadings" -- that is, any documents attached to or incorporated in the plaintiffs' complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5ᵗʰ Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5ᵗʰ Cir. 2000)).  Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment.  See United States ex rel. Willard v. Humana Health Plan of Texas Inc., 336 F.3d 375, 379 (5ᵗʰ Cir. 2003).

## II.

### Sovereign Immunity

The defendants contend that sovereign immunity bars the plaintiffs' claims; they say that the plaintiffs have failed, in part, to request relief that is properly characterized as prospective, and, to the extent that they do request prospective relief, defendants contend that plaintiffs fail to plead an ongoing violation of federal law such that the Ex parte Young exception to sovereign immunity is inapplicable.[8]  The Court disagrees.

"Sovereign immunity is the privilege of the sovereign not to

---

[8]Defendants concede that plaintiffs seek prospective relief to the extent that they request removal of all class members from the sex offender registry and notification to agencies that they are no longer subject to registration or notification requirements.  However, defendants suggest that the plaintiffs fail to allege an ongoing violation of federal law.

13

be sued without its consent." <u>Virginia Office for Protection and Advocacy v. Stewart</u>, 131 S.Ct. 1632, 1637 (2011)(holding that <u>Ex parte Young</u> exception to sovereign immunity permitted suit by independent state agency dedicated to advocacy for persons with disabilities against certain state officials sued in their official capacities, alleging violations of federal law by refusing agency access to records to which it was entitled under federal enabling statutes).  The Eleventh Amendment bars suits by private citizens against a state in federal court.  <u>K.P. v. LeBlanc</u>, 627 F.3d 115, 124 (5th Cir. 2010)(citing <u>Hutto v. Finney</u>, 437 U.S. 678, 700 (1978)).  This immunity protects state actors in their official capacities.  <u>Id.</u>  There is, of course, "an important limit" on the sovereign immunity doctrine: the iconic <u>Ex parte Young</u> exception "rests on the premise...that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes." <u>Stewart</u>, 131 S.Ct. at 1638; <u>K.P.</u>, 627 F.3d at 124 (<u>Ex parte Young</u> "is based on the legal fiction that a sovereign state cannot act unconstitutionally[; t]hus, where a state actor enforces an unconstitutional law, he is stripped of his official clothing and becomes a private person subject to suit."); <u>see also</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 n.10 (1989)(noting "[o]f course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because

14

'official-capacity actions for prospective relief are not treated as actions against the State'").

Of course, as this Court previously noted, the <u>Ex parte Young</u> exception applies when the plaintiff demonstrates that the state officer has "some connection" with the enforcement of the disputed act.  <u>See</u> <u>Doe v. Jindal</u>, No. 11-388, 2011 WL 3925042, at *5 (E.D. La. Sept. 7, 2011)(citing <u>K.P.</u>, 627 F.3d at 124 (citing <u>Ex parte Young</u>, 209 U.S. at 160), and noting that the purpose of the connection requirement is to prevent litigants from misusing the exception)).  The Fifth Circuit U.S. Court of Appeals instructs:

> *Ex Parte Young* gives some guidance about the required "connection" between a state actor and an allegedly unconstitutional act.  "The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists."

<u>Id.</u> (quoting <u>Ex parte Young</u>, 209 U.S. at 157).  But the defendants do not suggest that they lack the requisite connection with the enforcement of the continued registration requirement necessary to establish the applicability of the <u>Ex parte Young</u> exception to their sovereign immunity;[9] rather, defendants contend only that not

---

[9]Indeed, defendants would stretch to suggest as much, given that none of these defendants (only Governor Jindal, who was dismissed by this Court's Order and Reasons, <u>see</u> <u>Doe v. Jindal</u>, No. 11-388, 2011 WL 39250425 (E.D. La. Sept. 7, 2011) invoked sovereign immunity in <u>Doe I</u>.  Moreover, this Court previously observed that these defendants have the authority to enforce the registry law in <u>Doe I</u>: "there seems little doubt that the defendants are responsible for administering and enforcing the sex registry

all the relief the plaintiffs seek is prospective, and they insist that plaintiffs fail to allege an ongoing violation of federal law because Act 402 changed everything.

"[I]n determining whether the doctrine of <u>Ex parte Young</u> avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"   <u>Stewart</u>, 131 S.Ct. at 1639 (quoting <u>Verizon Md. Inc. v. Public Serv. Comm'n of Md.</u>, 535 U.S. 635, 645 (2002)).  The plaintiffs' lawsuit satisfies this inquiry: they allege an ongoing violation of federal law pursuant to § 1983 (by alleging that the defendants continue to fail to remedy the Equal Protection violation conduct focused in <u>Doe I</u>).  They do also seek relief that is indeed prospective in nature: declaratory relief that their continued subjection to sex offender registration and notification requirements violates the Equal Protection clause; that they be removed from the registry; and that the records

---

law...[t]his places the defendants among those who contribute to the plaintiffs' harm."  <u>See</u> <u>Doe I</u>, 851 F. Supp. 2d 995, 1004 (E.D. La. 2012).  Defendants did not appeal this Court's ruling in <u>Doe I</u>.
        It is also noteworthy that, during oral argument, counsel for defendants conceded that the nine plaintiffs in <u>Doe I</u> were provided relief in accordance with this Court's Judgment (including by being removed from the sex offender registry and issued new licenses without the "SEX OFFENDER" designation) through cooperation amongst various defendants in their official capacities; the same defendants named in this lawsuit.

documenting that they are sex offenders be expunged.[10]

                              III.

                            Standing

     The defendants next urge this Court to resolve another
threshold issue: the Court must be satisfied that each of the three
plaintiffs have standing to challenge the continued registration
requirement imposed on individuals convicted of violating
Louisiana's Crime Against Nature by Solicitation statute.   Like
they did in Doe I, the defendants vigorously attack the plaintiffs'
standing.

     Article III of the Constitution commands that a litigant must
have standing to invoke the power of a federal court.   See Nat'l
Fed'n of the Blind of Texas, Inc. v. Abbott, 647 F.3d 202, 208 (5th
Cir. 2011).   The doctrine of standing requires that the Court
satisfy itself that "the plaintiff has 'alleged such a personal
stake in the outcome of the controversy' as to warrant his
invocation of federal-court jurisdiction." See Summers v. Earth
Island Institute, 555 U.S. 488, 493 (2009); see also Doe v.
Beaumont Indep. Sch. Dist., 240 F.3d 462, 466 (5th Cir. 2001)(citing
Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343

---

     [10]In fact, the plaintiffs in Doe I sought the same relief
which the defendants did not then argue was retrospective in
nature.   Plaintiffs here thus characterize defendants' sovereign
immunity argument as frivolous.   It seems, at best, a submission of
tortured reasoning, and offers an unnaturally restrictive view of
the Court's decision in Doe I regarding defendants' conduct when
measured by Equal Protection doctrine.

                              17

(1975)).  "Standing to sue must be proven, not merely asserted, in order to provide a concrete case or controversy and to confine the courts' rulings within our proper judicial sphere." <u>Doe v. Tangipahoa Parish School Bd.</u>, 494 F.3d 494, 499 (5th Cir. 2007) (noting that "[n]o amount of creative inferences from the pretrial order or 'stipulations' can overcome [the necessary proof in the record required to show standing]" and that the Board's failure to contest standing cannot create jurisdiction because standing is not subject to waiver by the parties).

To establish standing, the plaintiffs must demonstrate the "irreducible constitutional minimum of standing", which is informed by three elements: (1) that they each personally suffered some actual or threatened "injury in fact" (2)  that is "fairly traceable" to the challenged action of the defendants; (3) that likely "would be redressed" by a favorable decision in Court. <u>See Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).[11]  The Court has examined in depth the charge sheets and court records of each of the three plaintiffs, which were submitted for this Court's *in camera* review: the Court is satisfied that the plaintiffs have alleged a personal stake in the outcome of this litigation that is traceable to defendants and

_____

[11] The actual injury requirement ensures that issues will be resolved "not in the rarified atmosphere of a debating society, but in a concrete factual context." <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.</u>, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

redressable by a favorable decision in Court.

There is no dispute,[12] and more importantly the record evidence establishes, that each plaintiff was convicted of one violation of La.R.S. 14:89(A)(2), which was the prior version of the Crime Against Nature by Solicitation before it was reenacted as La.R.S. 14:89.2.[13]  The record confirms that each plaintiff is required to register as a result of a Crime Against Nature by Solicitation conviction; the prohibited conduct is also prohibited by the Prostitution statute, but without any registration requirement; the record also establishes that at no time were the plaintiffs required to register as a sex offender as a result of a conviction pursuant to those provisions where the age of the person solicited

_____

[12]By focusing on whether or not the plaintiffs have proven whether they solicited sex from a minor, the defendants appear to concede that plaintiffs were each convicted of Crime Against Nature by Solicitation.   Whether Act 402 places this burden on the offender, as opposed to the local district attorney, is not an issue that is decided at this time, although it could be important in the context of a merits inquiry into the Equal Protection challenge.

[13]La.R.S. 14:89(A)(2) provided:

A. Crime against nature is:
    (1) The unnatural carnal copulation by a human being with another of the same sex or opposition sex or with an animal....
    (2) The solicitation by a human being of another with the intent to engage in any unnatural carnal copulation for compensation....

19

would be relevant:  La.R.S. 14:89.1[14] or La.R.S. 14:89.2(B)(3) or (C).[15]   By showing that they continue to be subject to the requirements of the registry law -- which imposes such burdens as paying annual registration fees; requires extensive community notification obligations; inclusion of the words "SEX OFFENDER" prominently on their driver's licenses; and adherence to separate evacuation protocols in the event of a state emergency -- the plaintiffs have shown an actual, concrete and particularized injury.  They have satisfied the first element of Article III standing.

Second, the plaintiffs must establish that their injuries are fairly traceable, or caused by, the defendants' actions.  As this Court previously observed, and the defendants did not dispute, there seems little doubt that the defendants are responsible for administering and enforcing the sex registry law.  This places the defendants among those who contribute to the plaintiffs' claimed harm.  Because the defendants have the authority to enforce the

---

[14]La.R.S. 14:89.1 singles out aggravated crimes against nature, including "when the victim is under the age of seventeen years and the offender is at least three years older than the victim."

[15]La.R.S. 14:89.2(B)(3) is a subsection of the Crime Against Nature by Solicitation statute; (B)(3) provides for harsher penalties when the victim solicited is under the age of 18 ((B)(3)(a)), and even harsher penalties when the victim solicited is under the age of 14 ((B)(3)(b)).  Subsection C requires sex offender registration for those convicted of Crime Against Nature by Solicitation of a minor (those convicted under (B)(3)).

registry law, they have significantly contributed to the plaintiffs' claim of harm and, thus, the plaintiffs' injuries are traceable to the defendants' conduct.

Third, and finally, the Court considers redressability. "[A] plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury." Larson v. Valente, 456 U.S. 228, 243 n.15, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982). Here, the sued officials or their successors have duties related to the enforcement of the registry law and -- if the Court were to rule in the plaintiffs' favor -- the plaintiffs would be relieved of their obligation to register as sex offenders. Therefore, an outcome in plaintiffs' favor would redress the plaintiffs' present and future injuries.

Because the plaintiffs have standing, the Court turns to the defendants' challenge to the technical sufficiency of the plaintiffs' civil rights claim.[16]

IV.

These parties are by now be familiar with the applicable

---

[16]Like in Doe I, in contesting the plaintiffs' standing, the defendants insist that the Court should examine the underlying circumstances of the plaintiffs' convictions. Again, they fail to persuade the Court as to why this is relevant to the plaintiffs' standing: a Crime Against Nature by Solicitation conviction is the central consideration to finding an actual injury because that is what triggers the continuing registration requirement and the risk of an Equal Protection taint.

substantive legal and constitutional requirements, as this Court has spoken to them in Doe I emphatically.  See Doe v. Jindal, 851 F. Supp. 2d 995 (E.D. La. 2012).

In considering now whether these plaintiffs' allegations themselves are at this stage sufficient to withstand the defendants' Rule 12(b)(6) challenge, the Court reiterates the applicable legal principles.

*A.*

Section 1983 imposes civil liability on:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

42 U.S.C. § 1983.  To allege a § 1983 violation, a plaintiff must state a violation of a right secured by the Constitution or laws of the United States and state that the deprivation was committed by a person acting under color of state law.  Anderson v. Law Firm of Shorty, Dooley & Hall, 393 Fed.Appx. 214 (5th Cir. Aug. 26, 2010 (citing Randolph v. Cervantes, 130 F.3d 727, 730 (5th Cir. 1997)).  Because § 1983 imposes liability only for violations of rights protected by federal laws and the Constitution, "[t]he first inquiry in any § 1983 suit...is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'"  Baker v. McCollan, 443 U.S. 137, 140 (1970).

Here, the plaintiffs allege that they are being denied Equal

22

Protection under the Fourteenth Amendment because they continue to be subject to sex offender registration pursuant to La.R.S. § 15:542(A)(1)(a). The plaintiffs claim that they are each registered or registrable solely because they were convicted of La.R.S. § 14:89(A)(2)(prior to August 15, 2010) or La.R.S. § 14:89.2 (after August 15, 2010) -- Louisiana's Crimes Against Nature by Solicitation statute.  In the first generation of this case, this Court determined that because Louisiana's Prostitution statute and Crime Against Nature by Solicitation statute punish identical conduct, requiring one group of offenders to register as sex offenders, but not the other, violates the Fourteenth Amendment's guarantee of Equal Protection under the laws. <u>Doe v. Jindal</u>, 851 F. Supp. 2d 995 (E.D. La. 2012).  Plaintiffs here complain that, notwithstanding Act 402 or this Court's declaratory judgment -- that the application of the Registry Law to those convicted of Crime Against Nature by Solicitation...and their inclusion on the State Sex Offender & Child Predator Registry pursuant to La.R.S. § 15:542, deprives them of Equal Protection of the laws in violation of the Fourteenth Amendment to the United States Constitution -- they continue to be subject to the sex offender registration requirement, in violation of their right to Equal Protection, given that identically situated individuals convicted of solicitation of Prostitution are not required to register.

23

*B.*

The Equal Protection Clause of the Fourteenth Amendment of the Constitution commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1; <u>Vacco v. Quill</u>, 521 U.S. 793, 799 (1997)(citations omitted)(holding that New York's prohibition on assisting suicide did not violate Equal Protection Clause of the Fourteenth Amendment). The Constitutional lesson of Equal Protection under law is a common sense one. This is "essentially a direction that all persons similarly situated should be treated alike." <u>City of Cleburne, Texas v. Cleburne Living Center</u>, 473 U.S. 432, 440 (1985)(citation omitted); <u>John Corp. v. City of Houston</u>, 214 F.3d 573, 577 (5th Cir. 2000)(citation omitted)("The Equal Protection Clause protects individuals from governmental action that works to treat similarly situated individuals differently."); <u>Stoneburner v. Secretary of the Army</u>, 152 F.3d 485, 491 (5th Cir. 1998)(citation omitted)("The Equal Protection Clause...essentially directs that all persons similarly situated be treated alike."). However, "if a law neither burdens a fundamental right nor targets a suspect class," the Supreme Court has observed, "the legislative classification [will survive] so long as it bears a rational relation to some legitimate end." <u>Romer v. Evans</u>, 517 U.S. 620, 631 (1993)(citing <u>Heller v. Doe</u>, 509 U.S. 312, 319-20 (1993)); <u>City of Cleburne, Texas v. Cleburne Living Ctr.</u>, 473 U.S.

24

432, 440 (1985)("The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest.").[17]

When conducting the pivotal rational basis review, the U.S. Supreme Court has observed that "we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational." <u>Kimel v. Florida Bd. of Regents</u>, 528 U.S. 62, 84 (2000)(citing <u>Vance v. Bradley</u>, 440 U.S. 93, 97 (1979)).  Where, as here, the challenged classification is presumptively rational, "the individual challenging its constitutionality bears the burden of proving that the 'facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'" <u>Id.</u> (citing <u>Bradley</u>, 440 U.S. at 111).

To state at this juncture an Equal Protection violation, and thereby satisfy their burden of alleging a Constitutional violation sufficient to warrant § 1983 relief, the plaintiffs must allege

---

[17]<u>City of Cleburne, Texas v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439-40 (1985)("Section 5 of the Amendment empowers Congress to enforce this mandate, but absent controlling congressional direction, the courts have themselves devised standards for determining the validity of state legislation or other official action that is challenged as denying equal protection.").

that they have been purposefully treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. Stoneburner, 152 F.3d at 490 (citations omitted). The plaintiffs contend that they have stated a violation of the Equal Protection Clause for the same reason that the plaintiffs in Doe I succeeded in their claim: they allege that, because they were convicted of Crime Against Nature by Solicitation before August 15, 2011, even though their conduct also fell within the scope of the statute prohibiting solicitation of Prostitution, they have, without any rational basis, been subjected to mandatory sex offender registration while identically situated individuals convicted under the solicitation provision of the Prostitution statute are not required to register as sex offenders. At this stage of the litigation, the Court must accept the plaintiffs' well-pleaded facts as true and in the light most favorable to the plaintiffs; because the test is simply whether the plaintiffs have stated a claim for relief that has facial plausibility, the Court finds that the plaintiffs' allegations are technically sufficient to withstand dismissal.

The defendants contend that Act 402 substantively changed the law this Court declared unconstitutional in Doe I by providing a remedy in state court to those who prove they are only on the registry for a Crime Against Nature by Solicitation conviction (and, defendants contend, that they prove they did not solicit sex

from a minor).[18]  Thus, the defendants maintain that the plaintiffs

cannot succeed on their § 1983 Equal Protection claim.  It is

noteworthy (and puzzling) that the plaintiffs' complaint, which

post-dates Act 402, makes no reference to Act 402, and it is

unclear whether they directly (which they deny) or indirectly

attack Act 402.  That aside, however, the defendants have not

carried their burden at this stage to show that the plaintiffs have

failed to state a plausible claim for relief, particularly in light

of the Court's repudiation of defendants' conjecture in <u>Doe I</u>.[19]

---

[18]Again, the Court stresses that the Court does not reach
the question of who actually has the burden to satisfy Act 402's
requirement regarding persons under 17, the registrant or the local
district attorney.  That issue of statutory interpretation could be
rather important when taking account of whether Act 402, indirectly
or directly, adds an unreasonable burden to plaintiffs' ability to
be removed from the registry.

[19]As this Court previously wrote:

> The defendants also urge that the plaintiffs
> are not similarly situated to prostitutes
> because they have submitted no evidence
> regarding the underlying circumstances of
> their convictions.  That argument conveniently
> ignores that the straightforward comparison
> for the plaintiffs, for Equal Protection
> purposes, is with those convicted of
> solicitation of Prostitution.
> ...
> [T]he defendants [also] assert that requiring
> sex offender registration protects the
> public's safety, health, and welfare.  They
> insist that conviction is an imperfect
> indicator of the underlying charge and,
> because Crime Against Nature by Solicitation
> is a lesser offense to which other registrable
> offenses can be pleaded down to, it is
> possible that prosecutors pleaded down "more

The better time to consider whether the plaintiffs' charges directly, or indirectly, put Act 402 at risk, or whether that's even the target of this lawsuit, is when that issue has been developed by submission of briefing in connection with the plaintiffs' motions for summary judgment or class certification.[20]

---

> heinous" solicitation charges (such as solicitation of persons under 17...). The Court has no duty to indulge such patent hypothetical speculation; no suggestion exists in the record that the State legislature's purpose for requiring those convicted of Crime Against Nature by Solicitation to register as sex offenders was anchored to a legislative desire that prosecutors plead down other registrable offenses....

Doe v. Jindal, 851 F. Supp. 2d 995, 1008-09 (E.D. La. 2012).

[20]The defendants contend that La.R.S. 15:542, as amended by Act 402, is the reason why the plaintiffs and putative class members are still on the registry.  But the plaintiffs urge the Court to reject defendants' semantics, and insist that Act 402, in fact, does not eliminate the offending classification declared unconstitutional in Doe I because Act 402 is prospective and left intact the imposition of a sex offender registration requirement on those convicted of Crime Against Nature by Solicitation prior to August 15, 2011, but not those convicted under the identical solicitation provision of the Prostitution statute.  Plaintiffs insist that the defendants are bound by the doctrines of stare decisis and non-mutual offensive collateral estoppel.  Another argument advanced by plaintiffs, that is best left to a merits-inquiry, is whether Act 402 improperly imposes an exhaustion of state law requirement. See, e.g., Patsy v. Bd. of Regents, 457 U.S. 496, 501 (1982); Monroe v. Pape, 365 U.S. 167, 183 (1961), overruled on other grounds by Monell v. Dep't of Social Services of City of New York, 436 U.S. 658 (1978)).  The Court urges the parties to attempt to resolve their conceptual dispute and perhaps explore practical solutions for removing individuals from the registry in accordance with Doe I's declaratory judgment, notwithstanding the State's apparent petulance, as seemed apparent to the Court during oral argument; if one believes that undisguised sarcasm is a suitable replacement for effective and scholarly

Accordingly, IT IS ORDERED: that the defendants' motion to dismiss is DENIED.  IT IS FURTHER ORDERED: that the hearing on the plaintiffs' motion for summary judgment and motion for class certification is hereby continued, to be reset.

New Orleans, Louisiana, December 20, 2012

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

advocacy, then this Court's advice is that one should aspire to a different job description.  The Court also suggests that the plaintiffs consider the wisdom of omitting any reference to Act 402 in their complaint.  Simply stated, the submissions to the Court regarding summary relief and class certification do not adequately focus the issues.  There might be differences between this case and Doe I.  But, then again, there might not be.